Argued and submitted February 27, affirmed May 10, 2006

Zoe-Vona PALMROSE
and Marjorie Mace,
as the personal representatives for
the Estate of Hazel Palmrose,
Assignee of Regent Assisted Living, Inc.;
Regency Park Apartments, limited partnership,
and Regent Bowen, LLC,
*Appellants,*

*v.*

OREGON INSURANCE GUARANTY ASSOCIATION,
*Respondent.*

0406-05976; A127862

135 P3d 370

Kevin S. Mapes argued the cause for appellants. With him on the briefs were James T. McDermott and Ball Janik LLP.

Pamela Joan Stendahl argued the cause for respondent. On the brief were Peter R. Chamberlain and Bodyfelt Mount Stroup & Chamberlain LLP.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Edmonds, Judge.*

SCHUMAN, P. J.

---

* Edmonds, J., *vice* Richardson, S. J.

**SCHUMAN, P. J.**

In this insurance coverage dispute, the trial court granted summary judgment in favor of Oregon Insurance Guaranty Association (OIGA). We affirm.

The material facts are not in dispute. Plaintiffs are personal representatives of the estate of decedent Hazel Palmrose, who had a personal injury and wrongful death claim against an assisted living center. At the time of the decedent's injury and at the time her estate filed the claim against the assisted living center, the center was covered by a general liability insurance policy issued by Reliance Insurance Company of Illinois (RICI). RICI was a "surplus lines insurer," that is, an insurer that was not itself authorized to do insurance business in Oregon but could nonetheless provide insurance in Oregon by way of a "surplus lines licensee." ORS 735.405(3), (6), (9). RICI was not a member of OIGA, a statutorily created entity whose purpose is "to provide for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer[.]" ORS 734.520. After decedent's accident, however, RICI merged into a different company, Reliance Insurance Company (RIC). Unlike RICI, RIC was *not* a surplus lines insurer, and it *was* a member of OIGA.

Shortly after the merger, RIC became insolvent. Plaintiff sued the assisted living center; because RIC was insolvent, the center tendered defense to OIGA. OIGA declined coverage on the ground that RICI was not a member when it issued the policy or when the event leading to the claim occurred. Plaintiffs, assignees of the living center's claims against OIGA, brought this action. OIGA moved for summary judgment, contending that plaintiffs' decedent's claim was not a "covered claim" that OIGA, under governing statutes, was obligated to cover. The trial court granted the motion. Plaintiffs appeal and we affirm.

The key statute in plaintiffs' appeal is ORS 734.510, the definition section of the OIGA statute. Paragraph (4)(a) provides, in relevant part:

> " 'Covered claim' means an unpaid claim * * * that arises out of * * * an insurance policy to which ORS 734.510 to 734.710 apply and which is in force at the time of the occurrence giving rise to the unpaid claim * * * if:
>
> "(A) The insurer issuing the policy becomes an insolvent insurer after September 9, 1971 * * *."

Section (6) defines "insolvent insurer" as a member insurer that is, among other things,

> "(a) Authorized to transact insurance in this state either at the time the policy was issued or at the time of the occurrence giving rise to the unpaid claim[.]"

According to plaintiffs, if one simply inserts the definition of "insolvent insurer" into the definition of "covered claim," the result is a statutory scheme under which a "covered claim" is one arising out of a policy in force at the time of the claim, if the policy was issued by an insurer that subsequently "becomes" an insolvent insurer—and "becomes" means "turns into," as in "a caterpillar becomes a butterfly." According to plaintiffs, then, RICI issued the policy under which their claim arose; RICI then "became" RIC; RIC is an "insolvent insurer" because it was authorized to transact insurance at the time the policy was issued and the claim arose. That is the case, plaintiffs maintain, even though it was RICI and not RIC that issued the policy.

The problem with plaintiffs' claim—over and above the conceptual fallacy that when one company merges into another, the former "becomes" the latter—lies in the fact that, when the claim arose, the only policy in existence was issued by RICI, a surplus lines insurer, and, regardless of what happened to RICI later, it never issued "an insurance policy to which ORS 734.510 to 734.710 apply" as specified in ORS 734.510(4)(a). ORS 735.435(6), a provision within the "surplus lines law," ORS 735.400 to 735.495, requires every surplus lines policy issued in Oregon to state, in "bold type,"

> "This [policy or certificate of insurance] was procured and developed under the Oregon surplus lines laws. It is NOT covered by the provisions of ORS 734.510 to 734.710 relating to the Oregon Insurance Guaranty Association. If the insurer issuing this insurance becomes insolvent, the

Oregon Insurance Guaranty Association has no obligation to pay claims under this insurance."

(Emphasis in original.) *See also* ORS 735.425(1)(b)(B) (requiring surplus lines insurers to certify that they have advised insureds that, in the event of insolvency, losses will not be paid by OIGA). Thus, at the very first step of plaintiffs' logic, their position falters. Unequivocally, a "covered claim" is one "that arises out of and is within the coverage and limits of an insurance policy to which ORS 734.510 to 734.710 apply and which is in force at the time of the occurrence giving rise to the unpaid claim[.]" ORS 734.510(4)(a). The only policy in force at the time plaintiffs' decedent was injured was issued by RICI, and, under the surplus lines law, ORS 734.510 to 734.710 do not apply to that policy.

Plaintiffs attempt to avoid this conclusion in two ways, neither of which is persuasive. First, they argue that ORS 735.435(6) "is a notice requirement, and nothing more or less." That argument asks us to hold that the legislature required surplus lines insurers to warn their customers of a danger that, in reality, does not exist. We decline the invitation to subscribe to such a theory. That the requirement is embedded in notice statutes does not rob it of its meaning.

Second, plaintiffs argue that ORS 734.540 "specifically addresses the 'application' of" the OIGA statutes and states a complete catalogue of the kinds of insurance that are excluded from those statutes—and that the list does not include surplus lines insurance. The statute provides:

"ORS 734.510 to 734.710 apply to all kinds of direct insurance except life, health, title, surety, credit, mortgage guaranty, home protection insurance, wet marine and transportation insurance and insurance against the risk of economic loss assumed under a less than fully insured employee health benefit plan whether issued or delivered as health or casualty insurance."

That statute, they argue, conflicts with ORS 735.435(6) (surplus lines insurers must inform prospective insureds that the policy is not covered by OIGA). However, ORS 734.540 excludes certain "kinds" of direct insurance on the basis of what is insured. Surplus lines insurance, however, is defined by the identity of the insurer or the source of the funds from

which the insurer issues particular policies, not by what is insured. ORS 735.405. Plaintiff, in other words, confuses apples with oranges. The statutes do not conflict.

Affirmed.